# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 3 : 14 mj 265
2088 RANDY SCOTT DRIVE, APT. C, )
WEST CARROLLTON, OHIO ) MICHAEL J. NEWMAN
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A

located in the \_\_\_\_Southern\_\_\_\_ District of \_\_\_\_Ohio\_\_\_\_ , there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and 846 | possession with intent to distribute controlled substances / conspiracy to distribute and possess with intent to distribute controlled substances |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

STEVEN M. LUCAS, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/24/14

*Judge's signature*

City and state: DAYTON, OHIO                        NEWMAN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A

2088 Randy Scott Drive, Apartment C, West Carrollton, Ohio (hereinafter "**Target Residence**"). **Target Residence** is on the second floor of the building depicted in the below photograph, and is located behind the brick wall on the left side of the photograph. The letter "C" is on the door to the **Target Residence**.



## ATTACHMENT B

## ITEMS TO BE SEIZED

1. Controlled substances (including but not limited to heroin, cocaine, and marijuana);

2. Cellular phones, pagers, scales, packaging materials, diluting agents, and other property used in the distribution or storage of controlled substances;

3. Cash, cashier's checks, and other financial instruments representing proceeds of the distribution of controlled substances;

4. Ledgers, notes, records, receipts, correspondence, and other papers related to the acquisition or distribution of controlled substances;

5. Telephone numbers, phone contact lists, address books, or other contact data;

6. Wire transfer receipts, bank account information, checkbooks, bank statements and other financial records;

7. Indicia of occupancy, ownership, rental agreements, insurance, utilities related to the purchase or occupancy of 2088 Randy Scott, Apartment C, West Carrollton, Ohio or other residences;

8. Evidence of travel, such as rental car agreements, receipts, passports, airline tickets/receipts, travel itineraries, hotel bills, and credit card receipts;

9. Firearms, ammunition, or records relating to firearm/ammunition possession.

## **AFFIDAVIT**

Steven M. Lucas, a Special Agent (S/A) of the Drug Enforcement Administration (DEA), United States Department of Justice (hereinafter referred to as the "Affiant"), being duly sworn, deposes as follows:

## INTRODUCTION

1. Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. Affiant is a law enforcement officer and has been employed by the DEA since June 2005, and is assigned to the Dayton Resident Office. Prior to becoming a special agent, Affiant was a police officer with the Schererville Police Department between 1995 and 2005. During that time, Affiant was assigned to the DEA HIDTA group in Merrillville, Indiana for approximately 4 years. Affiant has conducted and participated in complex drug trafficking conspiracy and money laundering investigations which have resulted in arrests; execution of search warrants that resulted in the seizure of narcotics, narcotics proceeds and other evidence of narcotics trafficking activities; and supervised the activities of cooperating sources (CS) that have provided information and assistance resulting in narcotics purchases. Through training and experience, affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well

1

as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived there from. Through training and experience, affiant is familiar with the practices of narcotics distributors, whereby they attempt to conceal the true nature, source and location of proceeds of illegal activity, commonly referred to as money laundering. Affiant has participated in several Title-III wire tap investigations and is familiar with both how local drug traffickers and high level trafficker conduct transactions.

3. Affiant is participating in an investigation conducted by agents of the DEA and other agencies, into the heroin, marijuana and cocaine distribution activities of individuals in the Dayton, Ohio area and elsewhere. Heroin and marijuana are Schedule I controlled substances, and cocaine is a Schedule II controlled substance. I am familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my participation in this investigation, conclusions I have reached based on my training and experience, and upon information I believe to be reliable from the following sources:

- A. Oral and written reports about this investigation and other investigations which I have received from federal agents and agents from state and local law enforcement agencies;

- B. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;

- C. Telephone records, including toll records and subscriber information;

- D. Information developed from cooperating sources, and defendant witnesses;

E. Information developed from the use of Pen Registers and/or trap and trace;

F. Public records, and

G. Intercepted communications authorized by court order.

Affiant asserts there is probable cause to believe that evidence (as set forth in Attachment B) of violations of Title 21, United States Code (U.S.C.), §§ 841(a)(1) and 846 "Possession to with intent to distribute controlled substances" and "conspiracy to distribute and possess with intent to distribute controlled substances" may be found in 2088 Randy Scott, Apartment C, West Carrollton, Ohio (hereinafter "**Target Residence**"). **Target Residence** is further depicted and described in Attachment A. This affidavit does not contain all facts known to Affiant, only those necessary to establish probable cause in support of the requested search warrant.

## FACTS SUPPORTING PROBABLE CAUSE

4.   In summary, investigators believe Daniel Penaloza a/k/a "Cejas" ("DANIEL"), Abisai Benitez ("BENITEZ") and others are involved in a scheme to deliver to and distribute controlled substances in the Dayton, Ohio area and elsewhere. From the beginning of 2014 to the present, investigators have made controlled purchases from BENITEZ, made drug seizures, and have intercepted text messages and phone calls involving BENITEZ, DANIEL, and others that are related to drug trafficking. Affiant believes BENITEZ maintains **Target Residence** as a location to store items involved with drug trafficking.

3

5. Between September 2013 to present, Affiant was present for multiple interviews with a confidential source (referred to in this affidavit as "CS"). CS has provided information that has been corroborated by investigators as well has led to the seizure of bulk currency and seizure of drugs. CS is believed to be truthful and credible. CS learned in March and April 2014, that BENITEZ, DANIEL and another brother, (identity known to affiant) had become more involved with daily distribution drugs in Ohio for sources described by the CS.

6. On April 9, 2014, DEA investigators (in cooperation with the CS) arranged for a controlled purchase of one ounce of heroin from BENITEZ by an undercover agent ("UC") in the Dayton Mall area, located in the Southern District of Ohio. BENITEZ met with the UC and sold one ounce of heroin for $2500. During the transaction, BENITEZ was observed driving a Dodge Durango that he commonly utilizes. The Durango was also fitted with a court authorized MDT tracker prior to the deal. Investigators observed that after the transaction with the UC, the Durango traveled to the area of the **Target Residence**. In June, 2014, CS stated that DANIEL and BENITEZ were living near a Miamisburg area store called "Las Penas," but CS was unsure of the exact residence. Affiant is aware the Las Penas is approximately 2 miles from the **Target Residence**.

7. On May 15, 2014, during surveillance, the Dodge Durango commonly driven by BENITEZ was parked at 13 Kennywood Avenue, West Carrolton, Ohio. Affiant also observed the white Chevrolet Avalanche commonly driven by DANIEL parked next to the Durango.

8. In June 2014, an administrative subpoena was sent to DP&L, and Affiant

4

learned the utilities for both 13 Kennywood Lane, West Carrollton and **Target Residence** were maintained by a female connected to DANIEL (it is unknown if the female is his wife or girlfriend). Affiant is aware that she and DANIEL are involved in a relationship and lived together based on police reports filed as a result of an incident between them in Miami Township, Ohio.

9. Beginning in early June, 2014, investigators began intercepting communications over (937) 718-1080, a phone used by BENITEZ, pursuant to a court order issued by Judge Thomas M. Rose, United States District Court, Southern District of Ohio. On June 5, 2014, investigators intercepted a communication between BENITEZ and a person identified as Jovani Rivera ("RIVERA"), about BENITEZ and DANIEL selling ten (10) of something to RIVERA. The conversation included the term "10 old ladies," known to Affiant to be a common code word for cocaine (female references are commonly used for cocaine). Based on the location information provided by a court authorized mobile tracking device (MDT) on the vehicle, Affiant observed that the Dodge Durango commonly used by BENITEZ traveled from the area of **Target Residence** to the area of 2674 Latonia later that night. Affiant believed BENITEZ met with others at Latonia and potentially obtained drugs to sale from them. On June 6, 2014, investigators went to 2674 Latonia and obtained consent to search the residence from one of the occupants. Inside the home, investigators located a firearm as well as a small amount of a substance that field tested positive for cocaine. On June 11, 2014, RIVERA was arrested by police with nine pounds of marijuana just after meeting with BENITEZ. The arrest took place in Middletown, Ohio after a series of monitored communications occurred over the intercepted cellular telephone used by BENITEZ described above.

5

10. On June 7, 2014, at approximately 8:48 P.M., BENITEZ texted an unidentified female at cellular telephone (937) 657-0800 and stated that his address was **Target Residence** (apparently in an attempt to meet her). Affiant is aware from confidential sources and intercepted communications that BENITEZ and his prior girlfriend appeared to have split up, and BENITEZ appears to have moved over to **Target Residence** in June 2014. This belief is based in part on investigators observing BENITEZ several times at the **Target Residence** apartment complex, as well as the data from the MDT tracker installed on his Dodge Durango through May and June 2014 placing it in that same area on several evenings.

11. On June 12, 2014, the UC again made a drug purchase from BENITEZ in the Dayton Mall area, which was arranged by contacting (937) 718-1080 (the intercepted phone number used by BENITEZ). The UC purchased three ounces of powder cocaine that field tested positive for cocaine. During pre-purchase surveillance, investigators observed BENITEZ depart the **Target Residence** building using the common door in the rear, and enter the Durango commonly driven by him. During the transaction, BENITEZ indicated to the UC that he could sell the UC up to a kilogram of cocaine for $37,000.

12. On June 22, 2014, Affiant conducted surveillance at **Target Residence** complex and observed BENITEZ exit the common door for the **Target Residence** building. Affiant observed the door leads to four apartments and that apartment C was located upstairs and to the left of the stairs.

13. On June 23, 2014, Affiant served an administrative subpoena to the manager at Centerville Park Apartments. Affiant learned **Target Residence** was rented to a "Christopher Ramos Rivera." "Christopher Ramos Rivera" stated he works at Lewis

6

Tree and gave (937)718-1080 (the phone investigators are intercepting and used by BENITEZ) as his contact number. No photo identification was obtained. Affiant believes "Christopher Ramos Rivera" is a fake name used by BENITEZ to obtain the **Target Residence** based on the listed employer (which is BENITEZ' employer per surveillance, intercepted communications, and CS information), phone number, and emergency contact information. The emergency contact is believed to be BENITEZ' paramour and the address of 212 Irwin in believed to be the paramour's mother's residence. BENITEZ has been observed there during surveillance on multiple occasions.

14. In summary, **Target Residence** is believed to be a location used by BENITEZ to store drugs, based in part on the fact BENITEZ traveled from the **Target Residence** apartment complex just prior to meeting a UC and selling 3 ounces of powder cocaine on June 12, 2014. BENITEZ has been observed in the area of **Target Residence** in the evening hours (per GPS location data for (937) 718-1080 obtained via search warrant), leaving the **Target Residence** building during surveillance, and his known cellular phone was intercepted texting the **Target Residence** address to an unidentified female. The **Target Residence** utilities are in the name of BENITEZ' brother's paramour, and BENITEZ' phone number, employer, and contact information associated with him were used when "Christopher Ramos Rivera" (believed to be BENITEZ) rented the **Target Residence**.

15. Affiant knows from his training and experience in drug investigations that traffickers often maintain in their residences and other locations from which they conduct their drug trafficking activity, controlled substances, books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage and

7

transportation of controlled substances to include records showing the phone numbers and/or pager numbers of suppliers or customers, and other criminal associates. They frequently maintain receipts such as credit card billings, telephone bills and toll records, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes. They possess items used to package controlled substances. It is also common for these drug traffickers to maintain electronic devices, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity. These items are commonly maintained in locations to which drug traffickers have frequent and ready access, i.e. homes, apartments, businesses and automobiles.

16. It is common for drug traffickers to conceal narcotics, narcotics records, narcotics proceeds and other related items described above within their businesses, residences, and automobiles; with their criminal associates; or with other trusted individuals in order to conceal such items from law enforcement authorities.

17. Persons engaging in drug trafficking commonly conceal large amounts of currency, financial instruments, precious metals and other items of value. It is common for drug traffickers to purchase items costing over ten thousand dollars. In doing so, traffickers will often violate federal structuring laws (Title 31, U.S.C. Sections 5324) by obtaining several cashier's checks and/or money orders in small increments from several institutions. Traffickers often utilize agents or "smurfs" to purchase these checks or money orders, the purchase of which generates receipts. The proceeds of drug transactions, and evidence of financial transactions relating to the obtaining, transferring, secreting or spending of large sums of money gained through engaging in narcotics

activities is often found in the trafficker's residences, businesses, automobiles and other locations maintained for the purpose of concealing their activities.

18. Affiant knows that narcotics traffickers often purchase and/or title assets and open accounts, such as utility accounts, in fictitious names, aliases, or the names of relatives, associates, girlfriends or business entities to avoid detection of these assets and accounts by government agencies. Even though these assets and accounts are in names other than the traffickers', the narcotics traffickers actually own and continue to use these assets and accounts and exercise dominion and control over them.

19. Persons engaged in drug trafficking often take or cause to be taken photographs and/or videotapes of themselves, associates, drug proceeds or property derived from the proceeds derived from the sale of controlled substances. Traffickers usually maintain these items in their possession.

20. Affiant is aware, based on his training and experience that drug dealers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived therefrom. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers. Affiant is aware that several months ago, BENITEZ posted photographs (publicly viewable) on a Facebook account showing him in possession of firearms.

/

/

/

21. Based upon the information contained in this affidavit, Affiant asserts that there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have occurred, and that the items listed in Attachment A (which are evidence of the violations listed above) may be found in **Target Residence**.

_____
Steven M. Lucas, Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on June 24, 2014.

_____
Honorable Michael J. Newman
United States Magistrate Judge